[Cite as *State v. McKinnon*, 2010-Ohio-2145.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.   09 CO 17 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| FRANKLIN McKINNON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                                              Court, Case No. 08CR303.


JUDGMENT:                                        Affirmed.


APPEARANCES:
For Plaintiff-Appellee:                        Attorney Robert Herron
                                                              Prosecuting Attorney
                                                              Attorney Tammie Jones
                                                              Assistant Prosecuting Attorney
                                                              105 South Market Street
                                                              Lisbon, Ohio  44432


For Defendant-Appellant:                   Attorney Bryan Felmet
                                                              1100 Jackson Place
                                                              Steubenville, Ohio  43952

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                                              Dated:  May 10, 2010

VUKOVICH, P.J.

¶{1} Defendant-appellant Franklin McKinnon appeals from his conviction of robbery entered after a jury trial in the Columbiana County Common Pleas Court. Appellant's counsel has filed a no merit brief which appellant has not supplemented. Upon conducting an independent review of the record, we hold that the judgment of the trial court is affirmed, and counsel is permitted to withdraw.

STATEMENT OF THE CASE

¶{2} Appellant was arrested for robbery on September 27, 2008. The case was tried to a jury on March 17, 2009. At trial, an employee from the K-Mart electronics department testified that appellant had been in the store multiple times earlier in the week looking at prepaid cellular telephones. (Tr. 183-184, 207). On September 27, 2008, she witnessed appellant removing a phone from a locked hook that required a key to unlock. (Tr. 178, 180). She ran to the front of the store and told other employees that appellant had a phone. (Tr. 185).

¶{3} The employee working at the service desk and a stock employee performing maintenance testified that it was obvious that appellant had an object under his shirt as he walked toward the exit. (Tr. 208, 235). The stock person, Callen Owens, testified that he stood in front of appellant and asked what he had under his shirt. (Tr. 235-236). In trying to get around Mr. Owens, appellant pulled Mr. Owens toward him.

¶{4} Mr. Owens testified that appellant thereafter hit him and got around him. At that point, Mr. Owens tackled appellant to the ground. (Tr. 237). The store security agent, who was unaware of the situation, pulled Mr. Owens off appellant. (Tr. 239). Mr. Owens fled to the parking lot where a customer restrained appellant. (Tr. 240-241). Appellant was then permitted to use the bathroom as he had defecated in his clothing.

¶{5} The phone fell out of appellant's shirt during the scuffle. (Tr. 238-239). Evidence established that the phone was priced at $79.99. The container for the phone was discovered to have been cut in order to remove it from its locking hook. (Tr.

189). After appellant was arrested, Mr. Owens discovered a small pair of scissors in the toilet tank of the stall used by appellant. (Tr. 247). The police watched the store's surveillance video, which confirmed the altercation at the front of the store. This video was played to the jury.

¶{6} Thereafter, appellant testified that he was fifty-four years old and lived in Florida with his wife and daughter. (Tr. 274, 283). He stated that several weeks before his visit to K-Mart he came to Ohio to visit his dying sister. He had to stay longer than expected because he was beaten with an aluminum bat in August. He suffered severe head trauma and was airlifted to Pittsburgh. A steel implant was placed in his head. He did not follow the instructions on release for eight weeks of bed rest and follow-up visits. (Tr. 275).

¶{7} Appellant explained that at the time of the K-Mart incident he was using prescription pain medication and drinking alcohol, which police smelled on him at the time of his arrest. (Tr. 166, 170, 275, 283). He stated that he did not have much recollection of that day. (Tr. 276). He said that he did not understand what was taking place. (Tr. 281). After he testified that he had no history of stealing and that he had not been in trouble for thirty years, it was established that he had been convicted of attempted robbery in 1980. (Tr. 285).

¶{8} The jury found appellant guilty of robbery as charged. At the sentencing hearing, the state pointed out that appellant has a criminal history containing similar offenses and that he served prior prison time. (Sent. Tr. 5). The defense noted that appellant has a GED, that he had been employed, and that he has been a productive member of society for years. The defense pointed out that appellant has had no charges since 1999, a domestic violence charge. (Sent. Tr. 6-7). The defense also submitted appellant's medical records which resulted from the assault he suffered several weeks prior to the K-Mart incident. Appellant then exercised his right of allocution, stating that he had been drinking and taking prescription medication. He apologized and expressed frustration with himself, noting that he did not even need a phone. (Tr. 9-10).

¶{9} The court sentenced appellant to four years in prison as recommended by the state. Appellant timely appealed from the June 24, 2009 sentencing entry. New

counsel was appointed. Thereafter, counsel filed a motion to withdraw and a no merit brief. On December 18, 2009, this court provided appellant thirty days to file his own assignments of error. Appellant did not respond.

## NO MERIT BRIEF

¶{10} When appellate counsel seeks to withdraw and discloses that there are no meritorious arguments for appeal, the filing is known as a no merit or an *Anders* brief. See *Anders v. California* (1967), 386 U.S. 738. In this district, it has also been called a *Toney* brief. See *State v. Toney* (1970), 23 Ohio App.2d 203. We explained the following points and procedures in *Toney*.

¶{11} An indigent defendant's constitutional right to counsel on his direct appeal requires that court-appointed counsel make arguments in support of the appeal to the best of his ability. If, after a conscientious examination of the case, counsel concludes there are no good grounds for appeal, counsel should so advise the court and request permission to withdraw, accompanying his request with a brief if counsel finds anything in the record that might arguably support the appeal.

¶{12} A copy of counsel's request and brief is to be furnished to the defendant, who is given time to raise any points that he chooses. The appellate court must then examine the record and any arguments presented by counsel or the defendant. If the court agrees that there are no arguable issues, it may grant counsel's request to withdraw and affirm the trial court's judgment. If the court finds any legal points arguable on the merits, the court shall afford the indigent defendant assistance of counsel to argue the appeal. Id. at syllabus, 206-207, citing *Anders*, 386 U.S. at 774.

## FILE REVIEW

¶{13} As appellate counsel recognizes, there is no speedy trial issue. A person charged with a felony shall be brought to trial within two hundred seventy days. R.C. 2945.71(C)(2). If the person is held in jail in lieu of bail, as appellant was, each day in jail counts as three days. See R.C. 2945.71(E). Here, appellant's trial was scheduled to occur within ninety days from the day of arrest. However, appellant filed a motion to continue the trial and consented to be tried on March 17, 2009, which was the date the trial was held. His motion to continue extended the time under R.C.

2945.72(H). By expressly consenting to be tried on March 17, 2009 he conceded that this trial date was reasonable and timely.

¶{14} We recognize that a motion to change venue was filed by the defense. However, this motion was withdrawn after voir dire revealed that it was not difficult to find a jury unfamiliar with the case. (Tr. 123-124). Notably, the only juror who had read about the incident was excused for cause. (Tr. 80-82). No other issues with voir dire are apparent.

¶{15} A motion to compel discovery was filed. However, trial counsel explained that this was partly to ensure there was no outstanding discovery issue since counsel was a replacement for a prior defense attorney. (Tr. 125). Counsel admitted that there was no reason to believe the state provided less than full discovery under the Criminal Rules. (Tr. 124).

¶{16} Defense counsel also disclosed that appellant wished to receive statements from the witnesses. (Tr. 125). The trial court ruled that Crim.R. 16 discovery does not require the disclosure of such statements. The court thus overruled the motion. (Tr. 128). This decision was proper as Crim.R. 16 does not mandate the pretrial discovery of witness statements. See Crim.R. 16(B)(1)(a) (statements of defendant and co-defendant are subject to discovery); (B)(1)(e) (witnesses' names and addresses are subject to discovery); (B)(1)(g) (in camera inspection of witness statement for inconsistency with testimony only upon motion after direct examination); (B)(2) (statements of witnesses are not discoverable).

¶{17} We move from these procedural issues to evaluate any substantive issues. Appellant was convicted of robbery in violation of R.C. 2911.02(A)(2), which provides: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]" Theft is defined in pertinent part as follows: with purpose to deprive the owner of property, knowingly obtaining or exerting control over the property without the consent of the owner or person authorized to give consent or beyond the scope of the express or implied consent of the owner or person authorized to give consent. R.C. 2913.02(A)(1), (2).

¶{18} Physical harm is defined as any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3). The mental state for inflicting this element is recklessness. *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, ¶4, 6-13. The trial court recognized this and instructed the jury accordingly. (Tr. 314). Plus, the indictment contained this element, avoiding any argument regarding an omitted mens rea.

¶{19} Sufficiency of the evidence deals with legal adequacy rather than the weight or persuasiveness of the evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. In viewing a sufficiency of the evidence argument, we evaluate the evidence in the light most favorable to the prosecution. *State v. Goff* (1998), 82 Ohio St.3d 123, 138. A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found that the elements of the offense were proven beyond a reasonable doubt. Id.

¶{20} Viewed most favorably to the prosecution, the evidence shows that appellant cut a locked container in order to steal a prepaid cellular telephone. He knowingly exerted control over the phone by cutting the container and placing the phone under his shirt. His purpose to deprive the owner without the owner's consent is clear in these actions and in his attempting to exit the store with the phone. Hitting or trying to punch Mr. Owens constitutes the infliction or attempt to inflict physical harm. This action was performed in committing, attempting, or fleeing immediately after the theft offense.

¶{21} Accordingly, after viewing the testimony and the videotape in the light most favorable to the state, a reasonable person could determine that appellant inflicted or attempted to inflict physical harm upon Mr. Owens in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. As such, there was sufficient evidence that appellant committed robbery.

¶{22} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *Thompkins*, 78 Ohio St.3d at 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in

the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. A reversal on weight of the evidence is ordered only in exceptional circumstances. Id. In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. Id. at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

¶{23} In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore* (1999), 131 Ohio App.3d 197, 201. Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it, including appellant himself. See *Seasons Coal Co. v. Cleveland* (1994), 10 Ohio St.3d 77, 80; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

¶{24} Upon reviewing the transcript and the surveillance video, it does not appear that the jury clearly lost its way in weighing the evidence. Besides the testimony of Mr. Owens, the video also allowed the jury to conclude that appellant either punched Mr. Owens in the head or attempted to punch him in the head more than one time. The jury could easily conclude that this was an attempt to inflict physical harm and that it was performed at the very least with a reckless mind set. Finally, the weight of the evidence almost conclusively establishes that the physical altercation occurred during a theft offense.

¶{25} We proceed to address the trial court's decision to grant the state's request to instruct the jury that voluntary intoxication is not a defense. (Tr. 317). Defense counsel objected on the grounds that they were not attempting to present intoxication as an affirmative defense. (Tr. 289). Pursuant to statute, "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. R.C. 2901.21(C). Although not a necessary instruction, the court's decision to charge the jury that voluntary intoxication

is not a defense was a discretionary one, which was reasonable considering the potential for confusion of the jury where the defendant focused on his inebriation as if it were an excuse for his behavior. Thus, we move on.

¶{26} As aforementioned, appellant was indicted for robbery under R.C. 2911.02(A)(2), a second degree felony. See R.C. 2911.02(B). The defense sought a lesser included offense instruction on robbery under R.C. 2911.02 (A)(3), a third degree felony. This section replaces "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another" with "[u]se or threaten the immediate use of force against another." Force does not require an injury or other physiological impairment. See R.C. 2901.01(A)(1). Cf. 2901.01(A)(3).

¶{27} Had appellant not taken a swing at Mr. Owens, the addition of this option may have been warranted. However, there was testimony and a surveillance video establishing that appellant either punched Mr. Owens in the head or attempted to do so which if successful would have caused some injury or physiological impairment "regardless of its gravity or duration." See R.C. 2901.01(A)(3). As such, the court could reasonably refuse to instruct on an offense that would lower the charge from attempting to inflict physical harm during the theft to merely using force during the theft.

¶{28} Next, we review the sentence. Appellant seemed to blame his drug use on his recent injury. However, he had a prior charge for obtaining drugs through fraud. The court saw the surveillance tape and heard appellant testify at trial. The court also heard testimony that appellant had scoped out the phone situation prior to the date of the incident. The court heard appellant speak at sentencing. It was the trial court's province to judge his sincerity and his prior mental state.

¶{29} The court perceived a risk of recidivism and mentioned that appellant needs punished and the public needs protected. The court focused on appellant's criminal history, which did contain a 1980 conviction for robbery, a second degree felony. He was imprisoned for that offense and paroled in 1982. Although the offense was not recent, a court could wonder whether appellant reformed or just became more adept at avoiding detection for criminal offenses. For instance, he also had a domestic

violence charge and an attempt to obtain a controlled substance conviction both from 1999. He also disclosed an Oxycontin addiction from 2000 through 2005.

¶{30} The available range of sentences for a second degree felony is two to eight years. R.C. 2929.14(A)(2). Appellant was sentenced to four years, a mid-range sentence. This sentence was within the trial court's sound discretion in this case.

¶{31} Lastly, we point out that the court properly advised appellant at the sentencing hearing and in the sentencing entry that he will be subject to three years of post-release control upon release. R.C. 2929.19(B)(3)(c); R.C. 2967.28(B)(2). (Tr. 10). He was also notified orally and in writing that if he violated post-release control, he could receive a penalty of reincarceration for up to one-half of the stated prison term. R.C. 2967.28(D)(1). (Tr. 11).

¶{32} For the foregoing reasons, the judgment of the trial court is hereby affirmed and counsel's motion to withdraw is granted.

Waite, J., concurs.
DeGenaro, J., concurs.